UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| FERNANDO GARCIA, | Case No. 2:22-cv-01960-MMD-MDC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| JACOB ADAMS, *et al.*, | |
| Defendants. | |

**I.    SUMMARY**

Plaintiff Fernando Garcia sued Defendants Jacob Adams, Miguel Jahuey, and the Las Vegas Metropolitan Police Department ("LVMPD"), where they work, for arresting him and citing him for trespassing at the Cromwell[1] casino in Las Vegas after a dispute arose between Garcia and Cromwell staff when a cashier demanded to see identification before cashing out some chips that Garcia presented for redemption. (ECF No. 50 (the operative Fourth Amended Complaint).) Before the Court are the parties' competing motions for summary judgment. (ECF Nos. 55, 57.)[2] Because Adams and Jahuey had probable cause to arrest Garcia for trespassing, and as further explained below, the Court will deny Garcia's motion and grant Defendants' motion.

///

---

[1] Plaintiff also sued the Corner Investment Company, which does business as the Cromwell, but later settled with it. (ECF No. 21 (approving good faith settlement under NRS § 17.245).)

[2] Garcia moves for summary judgment on his 42 U.S.C. § 1983 claim based on purported violation of his Fourth Amendment Rights, his false imprisonment claim, and an unasserted battery claim based on Defendants handcuffing him. (ECF No. 55.) Defendants filed a response (ECF No. 63) and Garcia filed a reply (ECF No. 71). Defendants move for summary judgment on all of Garcia's claims against them. (ECF No. 57.) Garcia filed a response. (ECF No. 65.) Despite the Court granting them an extension of time *nunc pro tunc* (ECF No. 74), Defendants did not file a reply in support of their motion for summary judgment.

## II.   BACKGROUND

The following facts are undisputed unless otherwise noted. Early on New Year's morning, 2021, Garcia was playing blackjack at the Cromwell on the Las Vegas Strip. (ECF No. 57-2 at 5.) He decided to cash out his chips. (*Id.*) As the cashier was cashing him out, her supervisor got a phone call, and the supervisor asked the cashier to ask for Garcia's identification ("ID"). (*Id.*) The cashier then asked Garcia for his ID, but he declined to give it because he wanted to remain anonymous. (*Id.* at 6.) He wanted to remain anonymous because he suspected the Cromwell wanted to identify him as a card counter and ban him from the property. (*Id.*) Garcia asked to speak with a manager once he developed the impression that he was not going to get his chips, money, or a receipt back unless he gave ID. (*Id.* at 8.)

A Cromwell manager, along with the Cromwell's swing shift security supervisor, Robert Day, introduced themselves to Garcia and told him he was not going to get his chips or cash back unless he showed the cashier his ID. (*Id.*) Garcia told Day and the manager he wanted the Nevada 'gaming agency' (the Nevada Gaming Control Board) to get involved, and either Day or the manager told him to stay there, and that they would contact the Nevada Gaming Control Board on Garcia's behalf. (*Id.*)

After waiting about ten minutes, Garcia approached Day again (who had been waiting nearby) and asked him who they had contacted at the Nevada Gaming Control Board on his behalf. (*Id.* at 9.) Dissatisfied with Day's answer, Garcia called the Nevada Gaming Control Board himself. (*Id.*) After waiting on hold for five to seven minutes, Garcia was connected to a Nevada Gaming Control Board agent and began speaking with her. (*Id.* at 10.) While he was on the phone with the agent, Day approached him again, this time with LVMPD officers (and Defendants) Adams and Jahuey. (*Id.*)

This is where the bodycam footage picks up.[3] At the beginning of it, Adams, Jahuey, and Day approached Garcia, who was pacing around on the phone when they

---

[3] The parties proffered multiple copies of the same bodycam footage from officers (and Defendants) Jahey and Adams as evidence with their briefs. Indeed, Garcia says

2

first got near him. (ECF No. 58, Exh. D at 0:00:01-12.) But because Adams had not yet turned on the audio on his bodycam, Day had an initial, short, but inaudible conversation with Garcia, who held up a single finger to Day and moved the microphone of his smartphone away from his mouth, likely saying something to the effect of, 'one second, I'm on the phone,' to Day, and then walked away from Day. (*Id.* at 0:00:13-20.)

Right after Garcia walked away from Day, and shortly after Officer Jahuey turned the audio on to his bodycam, he radioed, presumably to someone else at LVMPD, that he was, "at a casino. He's refusing to ID himself to security so they want him trespassed off the property." (ECF No. 58, Exh. E at 0:00:47-54.) And then, shortly after Officer Jahuey concluded this radio transmission, Officer Adams told Day, "You can ask him to leave and then if he doesn't leave, we'll take action." (*Id.* at 0:01:00-07.) Next, Day approached Garcia and had another brief but inaudible conversation with him.[4] (*Id.* at 0:01:07-15.)

Garcia did not leave. Instead, he replied to Day, "Here, I'm on the phone with an agent right now so give me a second, give me a second." (*Id.* at 0:01:15-20.) Officer Jahuey then told Garcia, "[h]ey this is their property, so if you're gonna comply with them, comply with them. If not, you can get outta here, okay, simple as that." (*Id.* at 0:01:20-29.) Garcia did not leave after this statement, either. Instead, he replied, "just give me a second please." (*Id.* at 0:01:29-31.)

At that point, Officer Adams walked up behind Garcia, singing, "we're detaining you, you're being detained," as Garcia told the agent he was on the phone with, "they're

---

that the videos are identical. (ECF No. 65 at 10 n.15.) The Court cites Defendants' versions of the videos because Defendants marked which video belongs to which Defendant, Exhibit D for Adams and Exhibit E for Jahuey. The Court cites the timestamp in the bottom left-corner of the videos, which shows the amount of time elapsed in the videos, as apparently the timestamps in the top-right of the videos are not reliable. The Court reconstructs the following facts from the bodycam footage.

[4]Garcia swears in his declaration that Day had been solicited by Adams and his partner to make this demand to give the police officers the authority to act against him, and further swears that he had not been told to leave or given a trespass warning before this point. (ECF No. 55-2 at 4-5.) The Court discusses this further below.

arresting me[.]" (*Id.*, Exh. D at 0:01:06-14.) Adams then handcuffed Garcia's hands behind his back while Jahuey hung up Garcia's phone. (*Id.* at 0:01:15-35.)

Next, accompanied by Day, Adams and Jahuey walked Garcia across the casino floor and outside to an alley between the Cromwell and the Flamingo where they had their police vehicles waiting. (*Id.* at 0:01:35-0:03:45.) As they were walking, Garcia repeatedly asserted that Adams and Jahuey were illegally detaining him, and they responded that they were not, alternatively citing his refusal to leave the property, the fact he was counting cards, the fact that he would not identify himself, that Garcia was causing a disturbance, and because he was asked to leave the property several times as the reasons that their detention of him was proper. (*Id.*) Adams proceeded to pat Garcia down for weapons. (*Id.* at 0:03:45-0:04:15.)

Adams and Jahuey spent the next approximately 20 minutes talking with Garcia and writing him a citation (he remained in handcuffs for the first few minutes of this interaction, though an unidentified officer eventually took the handcuffs off). (*Id.* at 0:04:15-0:23:55; *see also id.*, Exh. E at 0:10:20-25 (taking handcuffs off).) Day stood nearby the whole time. (*Id.*, Exh. D at 0:04:15-0:23:55) Day eventually signed the trespass citation that Adams presented to him. (*Id.* at 0:23:55-0:24:13.) Next, Day read a statement related to the citation to Garcia basically saying that Garcia was trespassing under NRS § 207.200 and warned him that if he ever came back to the Cromwell he would be immediately arrested. (*Id.* at 0:24:13-56.) Adams then gave Garcia a copy of the trespassing citation and Garcia read it while discussing its contents with Adams. (*Id.* at 0:24:56-0:27:43.)

During their conversation about the written citation, Adams told Garcia that the Cromwell would still let him cash out his chips despite the trespass citation if he identified himself to a cashier and Adams accompanied him. (*Id.*) Garcia indicated he would like to do that (*id.* at 0:27:43-57), so Day and Adams accompanied him back inside the casino, where Garcia gave the cashier his ID and some chips, and she gave him some money (*id.* at 0:27:57-0:33:25). Throughout this time, Garcia continued to discuss the propriety

4

of his detention with Adams and Day. (*Id.*) Garcia's interactions with both Cromwell employees and the two LVMPD officers concluded when Adams walked Garcia back out the front door of the casino. (*Id.* at 0:33:25-0:34:39.)

Garcia asserts the following claims in his operative Fourth Amended Complaint:[5] false imprisonment or false arrest (ECF No. 50 at 15); defamation (*id.* at 15-16); negligence (*id.* at 16); violation of his Fourth Amendment rights under 42 U.S.C. § 1983 (*id.* at 16-17); conversion (*id.* at 17-18); and malicious prosecution (*id.* at 18-19).

## III.  DISCUSSION

Defendants argue both in response to Garcia's motion and in their motion for summary judgment that they are entitled to summary judgment because they had probable cause to arrest Garcia for trespassing. The Court focuses its discussion on explaining why it agrees with Defendants on this dispositive point. However, the Court then discusses why this finding also resolves nearly all of Garcia's claims, including his negligence and unasserted battery claims.

### A.  Probable Cause

"[A] warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citation omitted). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Id.* (citation omitted). "For information to amount to probable cause, it does not have to be conclusive of guilt, and it does not have to exclude the possibility of innocence[.]" *Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1209 (9th Cir. 2011). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). The Court may determine whether probable cause existed on a motion for summary judgment

---

[5]The Court granted Garcia leave to amend an earlier version of his complaint on his motion (ECF No. 24), and later dismissed that version of his complaint in part, but again with leave to amend (ECF No. 48).

where the underlying facts are undisputed. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

As noted, Defendants contend that Adams and Jahuey had probable cause to arrest Garcia for trespassing under NRS § 207.200(1)(b). (ECF No. 57 at 7.) To violate this subsection of this law, one must remain in a building owned by another after having been warned by the owner or occupant not to trespass. *See* NRS § 207.200(1)(b). Someone found to have done this is guilty of a misdemeanor. *See id.* An oral demand to leave the building can constitute a sufficient warning against trespassing. *See* NRS § 207.200(2)(e). Moreover, under Nevada law, a police officer may arrest someone without a warrant if they see that person committing or attempting a misdemeanor. *See* NRS § 171.124(1)(a); *see also Patel v. Dennett*, 389 F. Supp. 3d 888, 895 (D. Nev. 2018) ("In Nevada, a police officer may arrest a person for a misdemeanor offense committed in the officer's presence.") (citing NRS § 171.124).

Putting all this together, Defendants argue they had probable cause to arrest Garcia for trespassing under NRS § 207.200(1)(b) because they watched Day tell Garcia to leave or he would be trespassed, and then they gave Garcia a similar warning themselves, but he did not leave. (ECF No. 57 at 7-10.) Garcia counters that he never refused to leave, argues that Adams and Jahuey should have released him and instead investigated the Cromwell when they learned the Cromwell would not give him his chips back unless he showed ID, and otherwise argues they held him for too long and should not have moved him from where they initially encountered him. (ECF No. 65.) But Garcia otherwise describes the events depicted on the bodycam video as uncontestable and indisputable. (*Id.* at 10, 10 n.14.) Having reviewed the bodycam videos in detail, and considered their contents, the Court agrees with Defendants.

Because Garcia argues that the events depicted on the bodycam videos are uncontestable and indisputable (*id.* at 10, 10 n.14), the Court starts by rejecting Garcia's contrary contention that probable cause presents factual issues inappropriate for resolution at summary judgment (*id.* at 23). The Court will resolve the question of probable

cause based on the evidence before it. *See Act Up!/Portland*, 988 F.2d at 873 (stating that probable cause can be properly resolved at summary judgment when the underlying facts are not disputed).

Adams and Jahuey had probable cause to arrest Garcia for trespassing and they did not take longer than they should have to process and release him. The facts as shown on the bodycam videos establish this. Adams and Jahuey saw Day have a brief exchange with Garcia before they engaged with him, and saw Garcia hold his finger up towards Day and then turn away from him. (ECF No. 58, Exh. D at 0:00:01-15.) Jahuey then radioed back to somebody that the Cromwell wanted Garcia trespassed off the property. (ECF No. 58, Exh. E at 0:00:47-54.) It was only after these first two interactions that Adams told Day he could warn Garcia to leave, and then stated they would take action if he did not leave after the warning. (*Id.* at 0:01:00-07.) Day did that, but Garcia did not leave—he said to hold on because he was on the phone. (*Id.* at 0:01:07-20.) And then Jahuey warned him to leave or be arrested, but Garcia again asked for more time because he was on the phone. (*Id.* at 0:01:29-31.)

This evidence establishes that Adams and Jahuey watched Garcia commit the misdemeanor trespass under NRS § 207.200(1)(b) that they eventually cited him for. Based on Adams' initial radio call, he entered the interaction under the impression that the Cromwell wanted Garcia trespassed. And he watched Garcia brush Day off once, decline to leave after an explicit trespass warning from Day, and decline to leave after Adams warned him to leave or face detention. Jahuey was there for all those interactions as well. Combined, these facts and circumstances reasonably suggested to Adams and Jahuey that Garcia was refusing to leave the Cromwell despite having been warned to leave. They thus had probable cause to arrest him for trespassing. *See Scott v. Justice's Ct. of Tahoe Twp.*, 435 P.2d 747, 749 (Nev. 1968) (finding that staying in a hotel after having been warned by an authorized representative of the hotel to leave is sufficient to establish misdemeanor trespass under NRS § 207.200); *Aziz v. Eldorado Resorts, LLC*, 72 F. Supp. 3d 1143, 1152-53 (D. Nev. 2014) (finding that "City of Reno Defendants had

1  probable cause to initiate the criminal proceeding for trespass" under circumstances
2  similar to those present here).

3        And while Garcia swears in his declaration that Day had been solicited by Adams
4  and Jahuey in a sort of entrapment to give Garcia a trespass warning, giving the police
5  officers the authority to act against him, and further swears that he had not been told to
6  leave or given a trespass warning before this point, this contention does not create a
7  genuine dispute of material fact rendering summary judgment inappropriate. (ECF No.
8  55-2 at 4-5.) First, the bodycam evidence contradicts Garcia's statement. Specifically,
9  Day had a brief exchange with Garica and Jahuey radioed back to someone that the
10 Cromwell wanted Garcia trespassed off the property before Adams told Day to give
11 Garcia another trespass warning right in front of him. (ECF No. 58, Exh. D at 0:00:01-15;
12 *id.*, Exh. E at 0:00:47-54.) Second, and more importantly, Garcia's impression of what
13 warnings he had been given is immaterial to the probable cause analysis, which instead
14 focuses on what Adams and Jahuey reasonably believed at the time they arrested him.
15 *See Lopez*, 482 F.3d at 1072. The same evidence described immediately above shows
16 that Adams and Jahuey believed Garcia had already been warned multiple times to leave
17 but was refusing to do so. And this is why the pertinent portion of Garcia's declaration
18 does not create a genuine dispute of material fact.

19       Moreover, Garcia's argument that he never refused to leave is unreasonable. (ECF
20 No. 65 at 8-9, 11-12.) Being told to do something and not doing it is a refusal. And this is
21 what Garcia did based again on the evidence described above. The Court further agrees
22 with Defendants that Nevada's trespass statute does not provide an exception for being
23 on the phone, whether one is talking with a Nevada Gaming Control Board agent or not.
24 *See* NRS § 207.200. Indeed, Garcia does not really dispute that he was refusing to leave,
25 as indicated by his statement, "Plaintiff was literally trying to leave, admittedly without
26 abandoning his property." (ECF No. 65 at 8.) This necessarily implies that Garcia was not
27 going to leave unless the Cromwell agreed to give him his chips or cash back without
28 providing his ID. And as Day had indicated to him that was not going to happen, Garcia

was not going to leave. In addition, Garcia also does not support his argument that he was not refusing to leave with any binding precedent. (*Id.* at 8-9, 9 n.12 (citing nonbinding precedent not applying Nevada law).)

The argument he never refused to leave also dovetails with Garcia's unpersuasive argument that, legally, the Cromwell could not trespass him because he refused to show his ID while cashing out his chips. Garcia repeatedly makes this argument with citation to *Slade v. Caesars Entm't Corp.*, 373 P.3d 74, 76 (Nev. 2016). (ECF No. 65 at 15.) But in *Slade*, the Nevada Supreme Court recognized casinos' right to exclude anyone from their premises for any reason if the reason does not violate Nevada's public accommodation law prohibiting segregation or discrimination based on "the ground of race, color, religion, national origin, disability, sexual orientation, sex, gender identity or expression." 373 P.3d at 77. And Garcia has not alleged, nor has he argued, that the Cromwell wanted to trespass him for any of those reasons—or even analogous ones. Indeed, he is consistent throughout his operative complaint and in his briefing that the Cromwell wanted to identify him, and then trespass him without giving him his money back when he refused, because he was counting cards. Garcia makes the argument that because card counting is legal, excluding him for card counting is illegal. But he does not cite any caselaw that supports that argument. And being a card counter is not a protected characteristic such as race or religion. Thus, Garcia's argument based on *Slade* is unpersuasive.[6]

Garcia also argues that probable cause to arrest him for trespass dissipated once Day confirmed to Adams that the Cromwell was not going to let Garcia cash out his chips unless he showed them his ID. (ECF No. 65 at 13-19.) But by the time Day and Adams had the conversation about holding onto the chips, and as described above, Garcia's trespass was complete. Thus, the related concepts of remaining or dissipated probable cause do not quite apply. And Garcia otherwise relies upon the Nevada statute providing

---

[6]Indeed, the only case that the Court was able to locate (Garcia did not proffer or analyze it) citing *Slade* that specifically speaks to the exclusion of gamblers affirmed the pertinent casino's ability to exclude the gambler. *See Root v. Coast Hotels & Casinos, Inc.*, 495 P.3d 530 (Nev. App. 2021) (finding that the casino "lawfully excluded [the plaintiff] from their respective casinos").

9

that the police may detain someone for a reasonably necessary time period that does not exceed 60 minutes if the police officer sees the person commit a misdemeanor. (*Id.* at 23.) Specifically:

> A person must not be detained longer than is reasonably necessary to effect the purposes of this section, and in no event longer than 60 minutes. The detention must not extend beyond the place or the immediate vicinity of the place where the detention was first effected, unless the person is arrested.

NRS § 171.123(4). Having reviewed the bodycam videos, Adams and Jahuey detained Garcia for less than 30 minutes, spending much of that time writing him out a citation and discussing the contents of that citation. This is undisputed. (ECF No. 65 at 10 (contending he was detained for up to 26 minutes).) And they did not take Garcia too far, moving him to the alley next to the casino. (*Id.* at 6 (showing where they took him).) Thus, Garcia's detention by Adams and Jahuey does not appear to have violated the very law he cites, nor does it otherwise appear unreasonable. Taking less than 30 minutes to process someone for misdemeanor trespassing that the officers saw happen is reasonable.

In addition, Garcia argues that Adams and Jahuey had a duty to investigate the Cromwell because it refused to cash out his chips unless he showed his ID. (ECF No. 65 at 19-21.) However, and as Defendants argue (ECF No. 57 at 9-10), the statute Garcia relies on, NRS § 463.362, appears to vest investigatory jurisdiction in the Nevada Gaming Control Board—not LVMPD—because it uses the phrase, "the Board, through an agent, shall conduct whatever investigation it deems necessary…" *Id.* Neither side cites caselaw conclusively establishing otherwise. (ECF Nos. 57 at 9-10, 65 at 19-21.) Moreover, the Court must give unambiguous language in statutes its plain meaning. *See Slade*, 373 P.3d at 75. The plain language of this statute gives exclusive jurisdiction to the Nevada Gaming Control Board to investigate and resolve disputes over winnings at casinos. *See* NRS § 463.362. In addition, in *Erickson v. Desert Palace, Inc.*, 942 F.2d 694, 697 (9th Cir. 1991), the United States Court of Appeals for the Ninth Circuit held that under, "NRS 463.361, parties who assert they are owed a gaming debt, fraud or no fraud, are confined to the administrative process followed by state judicial review." *Id.* This holding further

10

supports by analogy the view that the Nevada Gaming Control Board has exclusive jurisdiction over investigations under NRS § 463.362 because the Board has exclusive jurisdiction over the entire dispute resolution process of which investigation would be an initial phase. In sum, the Court cannot find that Adams and Jahuey had a duty to release Garcia and instead investigate whether the Cromwell really could refuse to cash out his chips until he showed ID when they learned several minutes into their interactions that the Cromwell was holding on to his chips.

Garcia finally and generally argues that his detention by Adams and Jahuey was improper because they presented some valid reasons for it and some potentially invalid ones, such as the fact that he was card counting.[7] But the officers' "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153. It accordingly does not matter whether Adams and Jahuey had some improper motivations for detaining Garcia, because, again, as described above, they had objective probable cause to detain him for trespassing. Therefore, despite Garcia's arguments to the contrary, Adams and Jahuey are entitled to summary judgment that they had probable cause to arrest Garcia for trespassing, and that probable cause did not dissipate before the end of their pertinent interactions with Garcia.

///

---

[7] Garcia cites various cases for the proposition that card counting is legal. (ECF No. 65 at 1 n.1.) While Garcia is correct on that point, *see, e.g., Lyons v. State*, 775 P.2d 219, 221 (Nev. 1989), *abrogated on other grounds by City of Las Vegas v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 59 P.3d 477 (Nev, 2002), it is also true that "casino management may take measures to deny [card counters] the right to play." *Id.* at 221-22. Indeed, in another case Garcia relies on, *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1131 (9th Cir. 2012), the Ninth Circuit described card counting as a legal activity but went on to affirm the district court's grant of summary judgment to a police officer defendant on the plaintiff card counter's Section 1983 Fourth Amendment claim because the police officer had probable cause to arrest the plaintiff for trespassing, *see id.* at 1138. So while card counting may be legal, casinos may still trespass people who count cards. And *Desert Palace* overall supports the Court's analysis in this order more than it supports the positions Garcia takes in the underlying briefing.

### B.     Impact on Most of Garcia's Claims

Several conclusions follow from the Court's key finding that Adams and Jahuey had probable cause to arrest Garcia for trespassing. First, it means Defendants are entitled to summary judgment on Garcia's Fourth Amendment claim under Section 1983 because, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck*, 543 U.S. at 152. And second, it means that Garcia's *Monell*[8] claim also fails because Adams and Jahuey did not violate Garcia's constitutional rights. *See Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims […] require a plaintiff to show an underlying constitutional violation.") (citations omitted). Third, the Court's probable cause finding also means that Defendants are entitled to summary judgment on Garcia's false imprisonment or false arrest claim. *See Grover v. Clark Cnty.*, 625 P.2d 85, 86 (Nev. 1981) (finding that "summary judgment was properly granted as to the [false arrest] claim predicated on the arrest for lack of probable cause").

Fourth, because Garcia's defamation claim is based on his allegation that Adams and Jahuey walked him through the Cromwell in handcuffs even though they had improperly arrested him (ECF No. 50 at 15-16), it too fails because Adams and Jahuey had probable cause to arrest him. *See Tsao*, 698 F.3d at 1148-51 (affirming the district court's grant of summary judgment to the defendant police officer on a defamation claim because the officer had probable cause for the arrest, where the defamation claim was based on, "escorting [the plaintiff] off the casino floor in handcuffs in view of other patrons[,]" noting that it too turned on "whether there was in fact probable cause to detain" the plaintiff). Fifth, the Court's probable cause finding also means that Defendants are entitled to summary judgment on Garcia's malicious prosecution claim. *See Spencer v. Klementi*, 466 P.3d 1241, 1249 (Nev. 2020) (affirming the district court's finding that the "malicious-prosecution counterclaim was groundless because there was probable cause

---

[8]*Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978).

12

to criminally prosecute" the person who filed it); *Catrone v. 105 Casino Corp.*, 414 P.2d 106, 107-08 (1966) (affirming grant of summary judgment to casino on malicious prosecution claim and noting that "want of probable cause" is an element of it); *Boulware v. State of Nev., Dep't of Hum. Res.*, 960 F.2d 793, 801 (9th Cir. 1992) (affirming dismissal of malicious prosecution claim and noting that, under Nevada law, it includes an "element of lack of probable cause").

As to Garcia's conversion claim, it appears primarily asserted against the Cromwell. (ECF No. 50 at 17-18.) But Garcia alleges that Adams and Jahuey helped the Cromwell keep his chips from him. (*Id.*) However, the bodycam evidence shows that Adams helped Garcia get his chips back from the Cromwell after he had been cited for trespassing. (ECF No. 58, Exh. D at 0:27:43-0:34:39.) Regardless, Defendants argue that Garcia's conversion claim against them is time-barred under the applicable statute of limitations. (ECF No. 57 at 18.) Garcia does not specifically respond to this argument. (ECF No. 65 at 28-29 (arguing that Adams and Jahuey were complicit in the conversion because they did not demand the Cromwell return Garcia's chips after they learned the Cromwell was holding on to them, but not addressing the statute of limitations argument).) The Court agrees with Defendants that this claim is time barred.

"NRS 11.190(5)(a) provides for a one-year statute of limitations for any claim alleging unlawful seizure of personal property by police officers." *Fodor v. Henderson Police Depr.*, Case No. 2:10-cv-00127-LDG-PAL, 2010 WL 2161810, at *3 (D. Nev. Mar. 30, 2010), *report and recommendation adopted sub nom. Fodor v. Henderson Police Dep't*, Case No. 2:10-cv-00127-LDG-PAL, 2010 WL 2161791 (D. Nev. May 28, 2010); *see also Fleming v. Las Vegas Metro. Police Dep't*, Case No. 2:23-cv-00177-RFB-EJY, 2023 WL 6392612, at *10 (D. Nev. Sept. 30, 2023) ("the statute of limitations for bringing a claim against a police officer for the unlawful seizure of property is one year."). It is undisputed that Garcia contends Adams and Jahuey helped the Cromwell effectively hold onto his chips for less than a half hour on January 1, 2021. (ECF No. 55-2 at 3-5; ECF No. 58, Exh. D at 0:27:43-0:34:39; ECF No. 65 at 28-29 (making the argument).) He was

1   aware that the Cromwell tried to keep his chips at that time—indeed, that dispute led to
2   this whole case. But Garcia did not file this case until June 21, 2022. (ECF No. 1 at 28,
3   33.) That is more than one year after January 1, 2021. Garcia's conversion claim against
4   Adams and Jahuey is accordingly time-barred by NRS § 11.190(5)(a), and they are
5   correspondingly entitled to summary judgment on it. *See Fleming*, 2023 WL 6392612, at
6   *10 ("Plaintiff's unlawful seizure of property claims are barred under NRS 11.190(5).").

### C. Negligence and Battery

The Court still needs to clear up a few issues. Specifically, Garcia moves for summary judgment on a battery claim that he did not explicitly assert in his operative complaint (ECF No. 55 at 23; *see also* ECF No. 50 (lacking such a claim)), and Garcia contends that Defendants did not move for summary judgment on his negligence claim (ECF No. 65 at 29), but in fact Defendants noted in their motion, "Plaintiff included a Third Cause of Action for Negligence but has maintained that such action was not brought against LVMPD" (ECF No. 57 at 5 n.1). As Defendants never filed a reply in support of their motion, they never addressed this confusion about the negligence claim.

This leaves the Court with either one or two claims[9] that must be addressed even though the parties did not cleanly present their arguments on these claims in their briefing. But this is the appropriate time to address these claims because, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). And neither of these claims is factually supported given the Court's probable cause finding.

The Court begins with Garcia's battery 'claim.' (ECF No. 55 at 23.) Defendants counter that Garcia cannot obtain summary judgment on Garcia's battery claim because he did not allege it in his operative complaint. (ECF No. 63 at 7.) While the Court does not agree with Defendants on this argument, the Court nonetheless finds that Defendants are entitled to summary judgment on Plaintiff's battery claim.

///

---

[9]Depending on whether the Court considers battery a claim.

Garcia can move for summary judgment on a battery claim even though he did not explicitly allege it in his complaint. "A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Pac. Coast Fed'n of Fishermen's Associations v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019) (citation omitted). Garcia moves for summary judgment on a battery claim based on his contention that Adams and Jahuey placed him in handcuffs without legal authority. (ECF No. 55 at 23.) Garcia alleged that he was handcuffed in his operative complaint, and it was improper and/or harmful, several times. (ECF No. 50 at 9, 11, 14, 15.) Thus, Defendants had fair notice of Garcia's battery claim, even though did not explicitly list 'battery' as one of his claims in the operative complaint. (*Id.*) *See also Glaser*, 945 F.3d at 1087 (reaching analogous conclusion).

That said, Defendants are entitled to summary judgment on the battery claim based on handcuffing Garcia because Adams and Jahuey had probable cause to arrest him for trespassing, and Garcia does not argue or allege they used excessive force in handcuffing him. (ECF Nos. 50, 55 at 23.) *See also Tsao*, 698 F.3d at 1148 (affirming grant of summary judgment to police officer defendant on battery claim where the card counting plaintiff had been handcuffed while being arrested for trespassing and the Ninth Circuit agreed that the police officer defendant had probable cause to arrest the plaintiff); *Fayer v. Vaughn*, 649 F.3d 1061, 1065 (9th Cir. 2011) (affirming dismissal of battery claim brought by casino patron plaintiff against police officer defendant who handcuffed them because the police officer had probable cause to believe the plaintiff had committed a felony). The Court's probable cause finding also negates Garcia's theory that Adams and Jahuey placed him in handcuffs without legal authority because the Court found to the contrary—they had probable cause to arrest him for trespassing. In sum, Defendants are entitled to summary judgment on Garcia's implicit battery claim.

That brings the Court to Garcia's negligence claim. (ECF Nos. 57 at 5 n.1, 65 at 29.) To start, Garcia is incorrect that Defendants did not address this claim in their motion for summary judgment. (*Id.*) And he mentions that they move for summary judgment on

1  all his claims. (ECF No. 65 at 29.) So Garcia's argument that his negligence claim should
2  proceed past summary judgment because Defendants did not raise it in their motion does
3  not carry the day. It appears to be based on a misunderstanding, oversight, or breakdown
4  in communication.

5  Regardless, Garcia's theory is that Adams and Jahuey were negligent because
6  they "violated NRS 200.460 and NRS 200.481[.]" (ECF No. 50 at 16.) Said otherwise,
7  Garcia alleges that Adams and Jahuey were negligent because they falsely imprisoned
8  him (NRS § 200.460) and committed a battery against him (NRS § 200.481). But as
9  explained above, Garcia's false imprisonment and battery claims fail primarily because
10 Adams and Jahuey had probable cause to arrest him for trespassing. So Garcia's
11 negligence claim against them based on alleged commission of these two torts
12 necessarily fails as well. Adams and Jahuey are entitled to summary judgment on
13 Garcia's negligence claim.

14 That resolves all of Garcia's claims. Defendants are entitled to summary judgment
15 on all of them.

## IV.  CONCLUSION

17 The Court notes that the parties made several arguments and cited several cases
18 not discussed above. The Court has reviewed these arguments and cases and
19 determines that they do not warrant discussion as they do not affect the outcome of the
20 motions before the Court.

21 It is therefore ordered that Garcia's motion for summary judgment (ECF No. 55) is
22 denied.

23 It is further ordered that Defendants' motion for summary judgment (ECF No. 57)
24 is granted.

25 It is further ordered that Defendants are entitled to summary judgment on Garcia's
26 negligence and implicit battery claims.

27 ///

28

The Clerk of Court is directed to enter judgment accordingly—in Defendants' favor—and close this case.

DATED THIS 26th Day of July 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE